IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAYMOND TAVIZON,

     Plaintiff,

v.                                      Civ. No. 16-293 GBW/LAM

RAUL D. VILLANUEVA and
CHARLENE WEBB,

     Defendants.

## ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' Motion for Summary Judgment (*doc. 28*).  Having reviewed the motion, the attendant briefing, and the relevant law, and being otherwise fully advised, the Court will GRANT Defendants' motion.

## I.    BACKGROUND

This case stems from Plaintiff's demotion from Lieutenant to Sergeant at the Grant County Sheriff's Department.  *Doc. 1* at 2-4.  In 2014, Plaintiff ran for Sheriff and lost the election to Defendant Raul Villanueva.  *Id.* at 3.  In November 2015, Plaintiff was demoted to Sergeant after he failed to obtain toxicology evidence in a high-profile criminal investigation.  *Id.* at 3-4.  Plaintiff filed suit against Defendants asserting that they violated his rights to free speech and political association under the First and

Fourteenth Amendments to the United States Constitution by retaliating against Plaintiff for his political activity.  *Id.* at 4-5.[1]  On September 16, 2016, Defendants filed a Motion for Summary Judgment on the basis that they are entitled to qualified immunity, and, in the alternative, that Plaintiff has failed to sufficiently allege that Defendants violated his constitutional rights.  *See generally doc. 28*.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] 'that there is an absence of evidence to support the nonmoving party's case.'"  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324.

The Court must resolve reasonable inferences and doubts in favor of the non-moving party, and construe evidence in the light most favorable to the non-moving

---

[1] In his Complaint, Plaintiff also states that Defendants deprived him of "Constitutional . . . due process guarantees[.]"  *Doc. 1* at 4.  However, Plaintiff clarified in his Response to Defendants' Motion for Summary Judgment that "Plaintiff never asserted a due process claim in his Complaint."  *Doc. 32* at 19. Therefore, any due process claim has been waived by Plaintiff and will not be addressed by the Court.

party.  *See Hunt v. Cromartie*, 526 U.S. 541, 551-54 (1999).  Nonetheless, at the summary

judgment stage, "a plaintiff's version of the facts must find support in the record."

*Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009).  As with any fact

asserted by a party in a summary judgment motion, the plaintiff must point the Court

to such support by "citing to particular parts of materials in the record . . . ."  Fed. R.

Civ. P. 56(c)(1)(A).

However, summary judgment motions based upon the defense of qualified

immunity are reviewed differently from other summary judgment motions.  The

defense of qualified immunity "protects governmental officials from liability for civil

damages insofar as their conduct does not violate 'clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Weise v. Casper*,

593 F.3d 1163, 1166 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231

(2009)).  When a defendant asserts summary judgment based on qualified immunity,

the plaintiff must demonstrate "(1) that the official violated a statutory or constitutional

right[] *and* (2) that the right was "clearly established" at the time of the challenged

conduct." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al–

Kidd*, 563 U.S. 731, 735 (2011)).  "[T]he record must clearly demonstrate the plaintiff has

satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified

immunity." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014).  The

Court may address the two prongs of the test in any order.  *Pearson*, 555 U.S. at 236.

Determining whether the allegedly violated right was "clearly established" depends on whether "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quotation omitted). While the plaintiff need not locate "a case directly on point," nevertheless "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

In analyzing any motion for summary judgment, the Court must keep in mind three principles. First, the Court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).

Second, the Court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-

moving party.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014); *see also Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (noting that courts generally "accept the facts as the plaintiff alleges them" when considering whether a plaintiff has overcome a defendant's assertion of qualified immunity at the summary judgment stage). However, "a plaintiff's version of the facts must find support in the record" at the summary judgment stage.  *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

Third, the court cannot decide any issues of credibility.  *See Liberty Lobby*, 477 U.S. at 255.  "[T]o survive the . . . motion, [the non-movant] need only present evidence from which a jury might return a verdict in his favor."  *Id.* at 257.  All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed.  D.N.M.LR-Civ. 56.1(b).

### III.   UNDISPUTED FACTS

1. Plaintiff began his employment with the Grant County Sheriff's Department as Deputy Sheriff in 1997 and held numerous positions, including Lieutenant. *Doc. 28* at 2; *doc. 32* at 1.

2. Defendant Raul Villanueva is the Sheriff of Grant County, and has served as Sheriff since 2010.  *Doc. 28* at 2; *doc. 32* at 1.

3. Plaintiff does not know exactly when Defendant Villanueva learned that Plaintiff intended to run for Sheriff, but suspects that Defendant Villanueva knew of his intention to run as early as 2011.  *Doc. 28* at 2; *doc. 28-1* at 5; *doc. 32*

at 2-3, 9.

4.  Plaintiff began openly discussing his plan to run for Sheriff with members of the community in January or February of 2012. *Doc. 28* at 2; *doc. 32* at 2.

5.  In April 2012, Defendant Villanueva demoted Plaintiff and placed him on two years' probation for allegedly failing to perform his job. *Doc. 32-1* at 8-9.

6.  On appeal, the County Manager reversed Defendant Villanueva's decision and reduced Plaintiff's punishment to a three-day suspension. *Id.* at 9-10.

7.  In August 2012, Defendant Villanueva again proposed that Plaintiff be demoted for failing to perform his job. *Id.* at 11.

8.  On appeal, the County Manager again reversed Defendant Villanueva's decision and determined that no disciplinary action would be taken against Plaintiff. *Id.* at 12.

9.  In January 2013, Plaintiff was investigated for money that was missing out of the evidence vault despite not being in charge of inventory of the vault. *Doc. 32* at 9.

10. Defendant Villanueva recommended that Plaintiff be terminated as a result of the evidence vault inventory issue. *Doc. 32* at 9.

11. During the appeals process, the County Manager determined that Plaintiff had not taken the money and reinstated him. *Doc. 32* at 9; *doc. 38* at 4.

12. In 2014, Plaintiff went to the Republican Party for endorsement of his

candidacy for Sheriff.  *Doc. 32* at 9.

13. Defendant Villanueva was aware of Plaintiff's candidacy for Sheriff by March

2014, when Plaintiff filed paperwork with the County declaring that he was

running for Sheriff as a Republican.  *Doc. 28* at 3; *doc. 32* at 9.

14. There were no news accounts of Plaintiff's intention to run for Sheriff before

March 2014.  *Doc. 28* at 3; *doc. 32* at 3.

15. Plaintiff did not author any editorials about his candidacy before March 2014.

*Doc. 28* at 3; *doc. 32* at 3.

16. Plaintiff did not run any advertising before March 2014.  *Doc. 28* at 3; *doc. 32* at

3.

17. Plaintiff did not directly tell Defendant Villanueva that he was going to run

before March 2014.  *Doc. 28* at 3; *doc. 32* at 3.

18. During the 2014 campaign, Plaintiff and Defendant Villanueva were guests on

a radio show informing the community about the candidates.  *Doc. 32* at 9.

19. During the campaign, Plaintiff's platform included that he was a conservative

Republican who was pro-Constitution.  *Doc. 32* at 9.

20. Defendant Charlene Webb became County Manager in September 2014.  *Doc.

28* at 7; *doc. 32* at 8.

21. Defendant Villanueva won the election in November 2014.  *Doc. 28* at 3; *doc. 32*

at 4.

22. Plaintiff claims that in November 2014, he was called into Defendant
Villanueva's office to discuss comments made by Plaintiff or his campaign staff
alleging that Defendant Villanueva had failed to follow procedures on "reverse
911 calls" for the community when a prisoner had escaped from prison. *Doc.
32* at 10.

23. At that time, Plaintiff claims that Defendant Villanueva told Plaintiff that he
was being reassigned to evidence custodial work and work with sex offenders,
and stated that he was not happy with Plaintiff about the campaign statements.
*Doc. 32* at 7, 10; *doc. 38* at 3.

24. Defendant Villanueva reassigned Plaintiff as the Lieutenant in charge of
Criminal Investigations in January 2015. *Doc. 38* at 3; *doc. 38-1* at 2.

25. On September 10, 2015, Plaintiff was called by the Santa Clara Police
Department to assist their department with investigating the case of a boy that
had allegedly been hit by a truck. *Doc. 32* at 10; *doc. 38* at 4-5.

26. Initially, the Santa Clara Police Department was investigating the incident, as
the State Police declined to take over the investigation. *Doc. 28* at 3; *doc. 32* at 4.

27. Plaintiff had discretion to make the decision to take over the investigation, and
such decision is not required to be reviewed by any superior. *Doc. 28* at 4; *doc.
32* at 4.

28. Plaintiff made the decision to take over the investigation on behalf of the Grant

County Sheriff's Department.  *Doc. 28* at 3-4; *doc. 32* at 4.

29. Plaintiff immediately dispatched to the scene and arrived an hour and a half after the incident had occurred.  *Doc. 32* at 10; *doc. 38* at 4-5.

30. Plaintiff was informed that the suspects had not been secured during the hour-and-a-half period between the incident and his arrival.  *Doc. 32* at 10; *doc. 38* at 4-5.

31. The investigation involved a minor child named Lawrence Grijalva, III, who was struck by a vehicle driven by his father, Lawrence Grijalva, Jr.  *Doc. 28* at 3; *doc. 32* at 4.

32. According to the investigation, the father, Mr. Grijalva, Jr., had arrived home at around 5:00 p.m. to pick up his cousin, Jessie Zazueta.  *Doc. 28* at 4; *doc. 32* at 4.

33. Mr. Grijalva, Jr., and Mr. Zazueta then drove away from the home, and it is suspected that at some point Mr. Grijalva, Jr., ran over his son with his vehicle.  *Doc. 28* at 4; *doc. 32* at 4.

34. By the time of his interviews with Mr. Grijalva, Jr., and Mr. Zazueta at about 7:00 p.m. on September 10, 2015, Plaintiff had information that Mr. Grijalva, Jr., was the driver of the red truck that was suspected of running over the child.  *Doc. 28* at 4; *doc. 32* at 5.

35. After the incident, Mr. Grijalva, Jr., stated that he had gone to Walmart and did not know his son had been hit until he received a phone call.  *Doc. 32* at 10; *doc.*

*38* at 4-5.

36. Mr. Grijalva, Jr., returned home and was not secured until Plaintiff arrived at the scene and took him back to the Grant County Sheriff's Office (GCSO) for questioning.  *Doc. 32* at 10; *doc. 38* at 4-5.

37. Plaintiff believed that there was no probable cause to obtain a warrant for a toxicology test because the suspect had not been secured for an hour and a half after the accident and Plaintiff did not smell alcohol or see any indication that the suspect was impaired.  *Doc. 32* at 11; *doc. 38* at 4-5.

38. Plaintiff made the decision not to seek a warrant to obtain any drug, alcohol, or toxicology test on the father to determine sobriety or drug influence.  *Doc. 28* at 5; *doc. 32* at 6.

39. Plaintiff knew that the lack of a toxicology test could be an issue in pursuing the case, and later admitted that it would have been beneficial to have a toxicology test.  *Doc. 32* at 4, 7; *doc. 28* at 6.

40. At about 8:15 p.m. on September 10, 2015, after the interviews with Mr. Grijalva, Jr., and Mr. Zazueta, Plaintiff had a conversation with Sergeant Jose Sanchez.  *Doc. 28* at 5; *doc. 32* at 6.

41. Sergeant Sanchez indicated that "I'll bet they're going to raise hell because we didn't do a toxicology."  *Doc. 28* at 5; *doc. 32* at 6.

42. Plaintiff responded to Sergeant Sanchez by stating: "They didn't take control of

this guy.  Nobody observed him . . . and I made a decision and I'm sticking

with it."  *Doc. 28* at 5; *doc. 32* at 6.

43. When Plaintiff called an Assistant District Attorney the next morning,

September 11, 2015, Plaintiff believed the Assistant District Attorney agreed

with his decision and his reasons for not seeking a toxicology test.  *Doc. 28* at 5;

*doc. 32* at 6, 11; *doc. 38* at 4-5.

44. On September 14, 2015, a different Assistant District Attorney complained to

Defendant Villanueva about Plaintiff's failure to obtain a toxicology test from

the suspect.  *Doc. 28* at 5; *doc. 32* at 6-7.

45. In November 2015, Plaintiff was placed under investigation for his handling of

the high-profile crime.  *Doc. 28* at 3; *doc. 32* at 4.

46. Defendant Villanueva's life-long friend at the GCSO conducted the internal

investigation of Plaintiff's handling of the incident, and Defendant Villanueva

relied on the investigation to determine discipline for Plaintiff.  *Doc. 32* at 11;

*doc. 38* at 5.

47. Defendant Villanueva proposed that Plaintiff be demoted.  *Doc. 32* at 11; *doc. 38*

at 5.

48. Grant County has an Employee Manual which provides Employee Grievance

procedures including a review by the Department Supervisor ("Step 1") and an

appeal to the County Manager ("Step 2").  *Doc. 28* at 5-6; *doc. 32* at 7.

49. Plaintiff had a Step 1 meeting with Defendant Villanueva on October 27, 2015, in which Plaintiff brought a shop steward for the local union, Michael Burns, as his representative.  *Doc. 28* at 6; *doc. 32* at 7.

50. On November 4, 2015, Defendant Villanueva issued his decision demoting Plaintiff from Lieutenant to Sergeant.  *Doc. 28* at 6; *doc. 32* at 8.

51. Pursuant to Step 2 of the procedures, Plaintiff then appealed the decision to the County Manager, Defendant Webb.  *Doc. 28* at 6; *doc. 32* at 8.

52. Plaintiff had an appeal hearing with Defendant Webb on November 23, 2015.  *Doc. 28* at 6; *doc. 32* at 8.

53. The hearing before Defendant Webb lasted about an hour and a half.  *Doc. 28* at 6; *doc. 32* at 8.

54. Defendant Webb upheld the demotion of Plaintiff on December 2, 2015, and Plaintiff was demoted from Lieutenant to Sergeant.  *Doc. 28* at 3, 7; *doc. 32* at 4, 8.

55. Plaintiff's rate of pay did not change as a result of the demotion.  *Doc. 28* at 7; *doc. 32* at 8.

56. After Plaintiff was demoted, his job duties increased.  *Doc. 32* at 11; *doc. 38* at 5.

57. Plaintiff testified that he believes his demotion was retaliatory because he ran against the Sheriff in the 2014 election.  *Doc. 28* at 7.

58. Plaintiff is still employed with the Grant County Sheriff's Department as a

Sergeant.  *Doc. 28* at 2; *doc. 32* at 1.

## IV.   ANALYSIS

Plaintiff claims that Defendants violated his rights to free speech and political association under the First and Fourteenth Amendments to the United States Constitution by retaliating against Plaintiff for his political activity of running for Sheriff.  *Doc. 1* at 4-5.  Defendants argue that they are entitled to summary judgment on both counts on the basis of qualified immunity as well as on the merits of the case.  *Doc. 28* at 1.

Because Defendants have asserted a qualified immunity defense, Plaintiff's "heavy two-part burden" arises to establish both that Defendants violated his constitutional rights and that such rights were "clearly established" at the time of the violation.  *Felders*, 755 F.3d at 877-78.  "For a constitutional right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Tenth Circuit Court of Appeals has found that "the law has been clearly established since 1968 that public employees may not be discharged in retaliation for speaking on matters of public concern, absent a showing that the government employer's interest in the efficiency of its operations outweighs the employee's interest

in the speech." *Andersen v. McCotter*, 100 F.3d 723, 729 (10th Cir. 1996) (citing *Pickering*, 391 U.S. at 568).  As explained further below, however, regardless of whether the relevant law is clearly established, Plaintiff has failed to meet his burden under the qualified immunity prong requiring him to demonstrate that Defendants violated any of his statutory or constitutional rights.  Thus, for the following reasons, the Court finds that Defendants are entitled to summary judgment on the basis of qualified immunity.

### A.  Freedom of Speech

Plaintiff argues that Defendants violated his freedom of speech under the First and Fourteenth Amendments by demoting him in retaliation for running for Sheriff and for certain political speech made by Plaintiff or his campaign staff.  *Doc. 32* at 13-15.  The Tenth Circuit Court of Appeals has found that campaigning against a superior can implicate protected speech under the First Amendment where the campaigning entails expression of political affiliation and beliefs.  *See, e.g., Jantzen v. Hawkins*, 188 F.3d 1247, 1252, 1257 (10th Cir. 1999).  To analyze a free speech retaliation claim under the First Amendment, courts apply the five-step test of *Pickering v. Board of Ed.*, 391 U.S. 563 (1968) and *Connick v. Myers*, 461 U.S. 138 (1983).  *See Jantzen*, 188 F.3d at 1257.  The Tenth Circuit has summarized the test as follows:

> 1. Whether the speech in question involves a matter of public concern.
> 2. If so, we must weigh the employee's interest in the expression against the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace.
> 3. Employee must show the speech was a substantial factor driving the challenged governmental action.

4. If so, can the employer show that it would have taken the same employment action against the employee even in the absence of the protected speech[?]

*Id.*  The first two steps are questions of law while the remaining two steps are questions of fact.  *See Jantzen*, 188 F.3d at 1257 (citing *Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1271 (10th Cir. 1998)).

A matter is of public concern, and therefore entitled to First Amendment protection, if it is "of interest to the community, whether for social, political, or other reasons."  *Lytle v. City of Haysville*, 138 F.3d 857, 863 (10th Cir. 1998) (citing *Connick*, 461 U.S. at 145-49).  If the matter is of merely personal interest to the government employee, then the speech is not protected by the First Amendment.  *Horstkoetter*, 159 F.3d at 1271.  Plaintiff's candidacy for Sheriff "undoubtedly relates to matters of public concern."  *Jantzen*, 188 F.3d at 1257 (citing Monitor Patriot Co. v. Roy, 401 U.S. 265, 272 (1971)).  And for the purposes of this analysis, the Court will assume that Plaintiff's interest in the expressions associated with his candidacy outweigh the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace.[2]

However, "[t]o withstand summary judgment at step three . . . an employee must produce evidence linking the employer's action to the employee's speech."  *Maestas v.*

---

[2] Defendants argue that "there is no genuine dispute of fact as to whether {Plaintiff's] interest outweighs the County's interest in complete investigation of high profile incidents within the community… ."  *Doc. 28* at 10.  However, Defendants' argument is misplaced because it begs the question.  The "speech" to which the *Pickering* analysis must be applied is that associated with Plaintiff's candidacy.  The dispute over Plaintiff's failure to properly conduct the Grijalva investigation is only relevant in steps 3 and 4 of the Pickering analysis where causation and pretext are considered.

*Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005).  Moreover, it is Plaintiff's burden to meet this element because he must establish the constitutional violation to survive a qualified immunity defense.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  It is here that Plaintiff's free speech claim falters.  Plaintiff alleges that Defendants demoted him in November 2015 after he ran for Sheriff in 2014.  To support his allegation that running for Sheriff was a substantial or motivating factor, Plaintiff provides two pieces of evidence: (1) in November 2014, Defendant Villanueva criticized Plaintiff for certain political statements made by either Plaintiff or his campaign staff during the election; and (2) Defendant Villanueva attempted on three different occasions to demote or terminate Plaintiff between April 2012 and January 2013.  *See doc. 32* at 14-16, 18; *doc. 32-1* at 8-12.

These pieces of evidence are insufficient to support a reasonable inference that his November 2015 demotion was the result of his campaign for Sheriff.  Defendant Villanueva's expression of dissatisfaction with one of the claims made by Plaintiff in the campaign immediately after the election did not include any express or implied threat to Plaintiff.  Given that the comment was made twelve months before Plaintiff's demotion and the lack of any similar comments in the interim, this isolated comment is very weak evidence of causation.  *See e.g., Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation.  By contrast, we

have held that a three-month period, standing alone, is insufficient to establish causation.").

The attempted discipline prior to the election is even less probative on the issue of causation. First, Defendant Villanueva last recommended discipline against Plaintiff in January 2013. This recommendation occurred almost two years before the demotion relevant here. This significant time gap is especially telling considering the rapid succession of Defendant Villanueva's other attempts at adverse employment action against Plaintiff, and the close proximity between those attempts and Defendant allegedly learning that Plaintiff would oppose him in the election. *See doc. 32* at 14. Moreover, any argument for Defendant Villanueva's unbroken malevolence toward Plaintiff since the election is spoiled by the fact that, in January 2015, Defendant Villanueva reestablished Plaintiff as the Lieutenant in charge of Criminal Investigations. *See doc. 38-1* at 2.

Second, the underlying circumstances were very different. Under Plaintiff's theory, in 2012 and 2013, Defendant Villanueva viewed Plaintiff as an electoral rival and threat. In fact, the tension which naturally arises from such a competition means that Plaintiff likely could have been terminated on that basis alone. *See Jantzen*, 188 F.3d at 1257-58 (It is a "reasonable prediction that when a subordinate runs for office against his or her boss, such a candidacy risks undermining that office's efficient performance."). In contrast, the November 2014 demotion occurred well after

Defendant Villanueva had successfully defeated Plaintiff's challenge.  The significant

passage of time between the earlier discipline recommendations, the lack of any

disciplinary efforts in the interim, and the material difference in the underlying

circumstances all dramatically undermine these incidents as evidence of causation for

the November 2014 demotion.  *See e.g., Maestas*, 416 F.3d at 1189 ("[E]vidence such as a

long delay between the employee's speech and challenged conduct . . . tend[s] to

undermine any inference of retaliatory motive and weaken the causal link[.]").

The fatal flaw in Plaintiff's evidence, however, arises from the fact that

Defendant Villanueva was not the final decisionmaker regarding Plaintiff's demotion.

It is undisputed that the County Manager had to approve any termination or demotion

of deputy sheriffs such as Plaintiff.  *Doc. 28* at 5-6; *doc. 32* at 7.  Not only did the Grant

County Manager have the authority in theory, he or she exercised it in practice.  In fact,

the Plaintiff prevailed upon the County Manager to reject all three of Defendant

Villanueva's adverse recommendations in 2012 and 2013.  *See doc. 32* at 14.  These

rejections show both that the final authority rested with the County Manager and that

the County Manager acted independently from the Sheriff.  As he had before, Plaintiff

challenged Defendant Villanueva's November 2015 demotion recommendation to the

County Manager, a position now occupied by Defendant Webb.  After considering the

matter, Defendant Webb gave final approval to the demotion.  Thus, in order for

Plaintiff to establish the requisite causation, he must show that Defendant County

Manager Webb's approval was motivated by Plaintiff's speech. But Plaintiff fails to provide any evidence suggesting that Defendant Webb's adverse employment decision in 2015 was motivated by Plaintiff running for Sheriff against Defendant Villanueva, or evidence indicating that Defendant Webb had any retaliatory motive at all. *See generally doc. 32*. Plaintiff's sole response to this problem is his claim that Defendant Villanueva "finally got a County Manager that stuck with him." *Doc. 32-1* at 28. Yet Plaintiff offers no evidence to support the proposition that Defendant Webb was any less independent of Defendant Villanueva than her predecessor. Consequently, Plaintiff has failed to present sufficient evidence from which a reasonable jury could conclude that his speech – either statements made during the campaign or his candidacy itself -- was a substantial factor driving his demotion.

Finally, even if the Court were to find that Plaintiff's protected activity was a substantial or motivating factor in his demotion, Plaintiff has failed to demonstrate that Defendants would not have taken the same employment action against Plaintiff even in the absence of the protected speech, as required by the fourth step of the *Pickering/Connick* test. *See Jantzen*, 188 F.3d at 1257. Defendants argue that Plaintiff was demoted because he made certain mistakes in conducting the investigation of a high-profile criminal investigation. *See doc. 28* at 14. It is undisputed that Plaintiff failed to seek a warrant to obtain a toxicology test in the high-profile criminal investigation two months before he was demoted. *Doc. 28* at 5; *doc. 32* at 6. While Plaintiff admits that he

did not obtain the toxicology test, he argues that this was the correct decision and that it therefore cannot be the basis for his demotion. *Doc. 32* at 18. However, Plaintiff's decision not to follow certain procedures in an investigation, whether his decision was appropriate or not, is a legitimate reason for his demotion that does not implicate his constitutional rights. *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000) ("'[T]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual.'" (citation omitted)); *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004) ("[I]n evaluating pretext, the relevant inquiry is not whether [the employer's] proffered reasons were wise, fair[,] or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs") (internal quotations and citation omitted). In her final grievance decision approving Plaintiff's demotion, Defendant Webb "concluded that [Plaintiff's] command decisions made upon adoption of the [high-profile criminal] case and investigation were not reasonable and that [Plaintiff] failed to meet the standards required for a Criminal Investigation Lieutenant").[3] *Doc. 32-3* at 1. As noted above, Plaintiff has presented no evidence that

---

[3] The Court also notes that the approved discipline – demotion to from Lieutenant to Sergeant with no loss of pay – follow logically from Defendant Webb's findings – that Plaintiff made poor command decisions. One would think that, if Defendant Villanueva and Defendant Webb were merely using the Grijalva episode as a pretext to punish Plaintiff for his political speech, the adverse action would have been significantly more severe, such as termination.

Defendant Webb was motivated by a desire to punish him for campaigning against Defendant Villanueva or that she was controlled by Defendant Villanueva.[4]

In short, it is undisputed that Defendant Webb had complete authority to review Defendant Villanueva's recommendation of demotion, and Defendant Webb concluded that Plaintiff failed to properly conduct a high-profile investigation.  There is no evidence that Defendant Webb's conclusions were a pretext for unconstitutional punishment.  Consequently, Plaintiff has failed to present sufficient evidence from which a reasonable jury could find in his favor on step four of the *Pickering/Connick* test.

Therefore, summary judgment in favor of Defendants is appropriate as to Plaintiff's freedom of speech claim.

### B. *Freedom of Association*

Plaintiff also argues that Defendants violated his freedom of association under the First and Fourteenth Amendments by demoting him in retaliation for running for Sheriff.  *Doc. 1* at 4-5.  The Supreme Court has extended the protection of freedom of association to public employees through a line of cases beginning with *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980).  "The First Amendment generally prohibits government officials from dismissing or demoting an employee because of the employee's engagement in constitutionally protected political activity."

---

[4] While it does not address the issue of pretext given the involvement of Defendant Webb, Plaintiff does argue that "[i]t was not until [Defendant Villanueva] stepped in[] that Plaintiff was investigated for allegedly failing to completely investigate the incident."  *Doc. 32* at 18-19.  Yet Plaintiff himself anticipated that the lack of a toxicology test would be an issue in the case, and even contacted a District Attorney due to his concerns about that issue.  *Doc. 32* at 4, 6.

*Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1416 (2016) (citing *Elrod* and *Branti*).

Public employees are protected under the First Amendment "from discrimination based

on their political beliefs, affiliation, or non-affiliation unless their work requires political

allegiance." *Snyder v. City of Moab*, 354 F.3d 1179, 1184 (10th Cir. 2003) (citation

omitted).

 To defeat summary judgment on his claim that Defendants violated his right to

freedom of association, Plaintiff must demonstrate "a genuine dispute of fact that (1)

political affiliation and/or beliefs were 'substantial' or 'motivating' factors" behind [his

demotion]; and (2) [his] employment position did not require political allegiance."

*Barker v. City of Del City*, 215 F.3d 1134, 1138 (10th Cir. 2000) (citing *Jantzen*, 188 F.3d at

1251).  "Political patronage need not be the sole reason for an employee's discharge, it

need only constitute a substantial or motivating factor." *Gann v. Cline*, 519 F.3d 1090,

1093 (10th Cir. 2008).  Once a plaintiff proves political patronage was a substantial or

motivating factor behind his dismissal, the burden of persuasion shifts to the defendant

to prove, as an affirmative defense, that the discharge would have occurred regardless

of any discriminatory political motivation.  *Id.*

 Plaintiff first argues that in running for Sheriff against Defendant Villanueva,

Plaintiff was exercising his right to political patronage.  *Doc. 32* at 13-15.  In support of

his argument, Plaintiff cites the unpublished decision of *Edwards-Flynn v. Yara*, No. CIV

08-0186 JB/ACT, 2009 WL 1563375, at *5 (D.N.M. May 18, 2009), *objections overruled*, No.

CIV. 08-0186 JB/ACT, 2010 WL 624086 (D.N.M. Jan. 26, 2010).  The plaintiff in *Yara* alleged that the defendant interfered with her right to run for public office by incorrectly certifying her to run in the wrong ward and then failing to timely correct the mistake.  *Id.* at *1.  The court found that "the right to fairly run for political office without being discriminated against based upon political beliefs or associations is protected by the First Amendment and the equal protection clause of the Fourteenth Amendment."  *Id.* at *5.  The court concluded that "allegations that a state officer or agency purposefully kept a candidate from running for public office by violating state election laws or imposing discriminatory ballot restrictions because the officer disagreed with the candidate's political views states a cause of action for violation of the First Amendment and of the equal-protection component of the Fourteenth Amendment."  *Id.*

Unlike in *Yara*, Plaintiff makes no claim that Defendants interfered with his ability to run for office.  *See generally doc. 1.*  Rather, he admits that he was able to run for Sheriff but claims that Defendants retaliated against him for his actions a year after the election.  *See generally id.*  Thus, the Court finds that this case is more factually analogous to *Jantzen*, in which a deputy sheriff ran a campaign against the incumbent sheriff and was immediately fired.  188 F.3d at 1250.  The Tenth Circuit Court of Appeals found that "[g]iven that the only factor driving [the plaintiff's] termination was his candidacy *qua* candidacy, [the plaintiff] has put forth no evidence that he was in any

way terminated for 'supporting or affiliating with a particular political party.'" *Id.* at

1252 (quoting *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996)).  The Court

therefore affirmed the lower court's grant of summary judgment against the plaintiff on

the basis that "[t]he right to political affiliation does not encompass the mere right to

affiliate with oneself." *Id.*  This reasoning is in line with courts in other circuits.  *See,

e.g.*, *Carver v. Dennis*, 104 F.3d 847, 850 (6th Cir. 1997) (no violation of the plaintiff's

freedom of association rights where she "was discharged solely because she announced

her candidacy against [the defendant] for [the defendant's] office"); *Wallace v. Benware*,

67 F.3d 655, 661 (7th Cir. 1995) (finding that a sheriff could have dismissed or demoted

the deputy who ran against him without violating the First Amendment).  Therefore,

the Court finds that there is no First Amendment protection against retaliation

motivated solely by an employee's candidacy for office against his superior.

Plaintiff argues that his claim is not defeated by the holding in *Jantzen* because he

was being punished not just due to his candidacy but also his association with the

Republican Party.  *Doc. 32* at 14-15.  Plaintiff presents no evidence to support this

theory.  Indeed, Plaintiff ran as a candidate of the Republican Party.  But to establish a

claim that Defendant Villanueva's alleged retaliation was based on Plaintiff's party

affiliation as opposed to his candidacy *qua* candidacy, Plaintiff must show Defendant

Villanueva harbored some animosity toward Republicans.  However, there is no

evidence that Defendant Villanueva made any negative comments about the

Republican Party, Plaintiff's affiliation with the Republican Party, or Plaintiff's broader political views.  In fact, Plaintiff has not demonstrated (or even alleged) that his act of requesting the endorsement of the Republican Party was the first time he had associated with the party.  *See generally docs. 1, 32*.  Lacking such evidence, no reasonable jury could conclude that the alleged retaliation which followed his candidacy was based upon his political party versus the candidacy itself.

Even without this deficiency, Plaintiff's freedom of association claim suffers from the same flaws as his freedom of speech claim.  First, for the same reasons explained above (*see supra* pp. 16-17), there is insufficient circumstantial evidence that Plaintiff's actions or associations surrounding the election were substantial or motivating factors in Defendants' decision to demote him.  Second, the final decisionmaker was Defendant Webb, and there is no evidence that she was motivated to punish Plaintiff for running against Defendant Villanueva or was otherwise controlled by Defendant Villanueva. *See supra* pp. 18.

*Jantzen* forecloses Plaintiff's association claim based upon his candidacy.  With respect to an association claim based upon political affiliation, Plaintiff has failed to raise a genuine issue of material fact that his political affiliation was a substantial or motivating factor in Defendants' decision to demote him.  As such, his association claim is subject to dismissal.

## V.   CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to raise any genuine issue of material fact that Defendants violated his statutory or constitutional rights be demoting him from Lieutenant to Sergeant.  Therefore, Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity (*doc. 28*) is GRANTED.

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**